661 P.2d 189

In the Matter of: Richard H. SILVER, Real Party in Interest, and Maricopa County Juvenile Action No. JS–4246/JD–1192, Petitioner,

v.

Honorable C. Kimball ROSE, Presiding Judge of the Juvenile Court in and for the County of Maricopa, Respondent Judge,

Carol E. Silver Rudman and Roger Rudman, Respondents.

No. 1 CA–CIV 6564–SA.

Court of Appeals of Arizona, Division 1, Department B.

Sept. 2, 1982.

Rehearing Denied Oct. 7, 1982.

Second Rehearing Denied Feb. 18, 1983.

Review Denied Mar. 22, 1983.

Atmore Baggot, Phoenix, for petitioner.

Carol E. Silver Rudman and Roger Rudman, in pro. per.

OPINION

FROEB, Presiding Judge.

Petitioner in this special action, Richard H. Silver, was formerly married to respon-

dent, Carol E. Silver Rudman. There are three minor children of the marriage, daughters born in 1966 and 1970, and a son born in 1974. This action is preceded by numerous court proceedings involving custody, both in the State of New York as well as Arizona. We granted jurisdiction because we have concluded that the order entered by the respondent judge of the Maricopa County Juvenile Court effecting a change of custody from petitioner to respondent is void.

While the court proceedings which precede this special action are somewhat involved, it is not necessary that all be set forth in detail. A summary of those proceedings necessary for an understanding of this decision follows.

The parties were granted a divorce by the New York Supreme Court on January 10, 1980. The custody of the three minor children was awarded to petitioner. Prior to the entry of the judgment of divorce, respondent moved to Scottsdale, Arizona with the three children without the knowledge or consent of petitioner.

On the same day the judgment was entered in New York, respondent filed an action in the Maricopa County Superior Court to modify the New York custody award. She also filed an appeal in New York.

On or about July 21, 1980, the Maricopa County Superior Court, Judge Elizabeth Stover, issued an order that Arizona did not have jurisdiction to modify the custody decree and directed respondent to deliver the three children to petitioner in accordance with the New York judgment. A special action in this court thereafter resulted in our order dated August 6, 1980, which found Arizona was not a convenient forum for determination of the modification of custody, but authorized the trial judge to conduct a hearing and to enter any orders for the protection of the minor children which were reasonably necessary pending a hearing on modification in New York.

On September 11, 1980, the Maricopa County Superior Court ordered that the three children be returned to New York; however, they were to remain in respondent's physical custody pending the New York modification proceeding. The court further stated in its order that it retained jurisdiction to enter further orders in the event modification proceedings were not instituted in New York. The court also indicated that any modification to the temporary physical custody order would be made by the New York court.

In further proceedings before the Maricopa County Superior Court, respondent was held in contempt for her noncompliance with the orders issued by Judge Stover.

In the meantime, Roger Rudman, husband of respondent, filed a petition in the Juvenile Court of Maricopa County on June 1, 1981, seeking to terminate the parental rights of petitioner and a petition to declare the children to be dependent and requesting that they be placed in the custody of Carol Rudman. In the proceedings which followed, the judge on the Juvenile Court joined Carol Rudman as a petitioner.

After a full hearing, the Maricopa County Juvenile Court, Judge C. Kimball Rose, dismissed both the petition to terminate and the petition for dependency on October 28, 1981, with, among other things, an express finding that the children were not dependent.[1] In its order, the court noted its awareness of the New York divorce judgment and its custody and visitation orders.

---

1. A.R.S. § 8–201(11) (Supp.1982) defines a "dependent child" as one who is adjudicated to be:

    (a) In need of proper and effective parental care and control and has no parent or guardian, or one who has no parent or guardian willing to exercise or capable of exercising such care and control.

    (b) Destitute or who is not provided with the necessities of life, or who is not provided with a home or suitable place of abode, or whose home is unfit for him by reason of abuse, neglect, cruelty or depravity by either of his parents, his guardian, or other person having his custody or care.

    (c) Under the age of eight years who is found to have committed an act that would result in adjudication as a delinquent or incorrigible child if committed by an older child.

Nevertheless, the juvenile court entered a further order which is at the center of this special action. The relevant portion reads as follows:

\* \* \* \* \* \*

IT IS ORDERED, in JS–4246, dismissing the Petition for Termination of Parent-Child Relationship filed June 1, 1981.

IT IS ORDERED, in JS–4246 and pursuant to A.R.S. 8–538 D, the Court finding the best interests of the individual children requires substitution and supplementation of parental care and supervision, that:

1. Custody of Dannielle Ina Silver shall be with the mother, Carol Rudman.

\* \* \* \* \* \*

3. The father, Richard Silver shall have visitation with Dannielle Ina Silver at such times and under such circumstances as she might indicate.

4. Custody of Jennifer Abra Silver shall be with the mother, Carol Rudman.

5. Custody of Matthew Abraham Silver shall be with the father, Richard Silver, under the terms of the New York Judgment and effective this date.

6. The father, Richard Silver, may have visitation with Jennifer Silver in accordance with the visitation authorized for the mother in the New York Judgment but to be exercised in such fashion that whenever possible Matthew Silver and Jennifer Silver shall not be in different homes during visitation.

\* \* \* \* \* \*

■ Petitioner contends that the Maricopa County Juvenile Court acted in excess of its jurisdiction and legal authority by its order pursuant to A.R.S. § 8–538(D) in the face of its determination that the children were not "dependent." We agree. The Juvenile Court incorrectly exerted its authority over the children in the absence of such a finding. This necessary foundation to its jurisdiction is required by Arizona Constitution, art. 6, § 15.[2]

The statutory grounds for terminating the parent-child relationship set forth in A.R.S. § 8–533 were found not to exist by the juvenile court. A.R.S. § 8–538(D) provides, however:

D. Where the court does not order termination of the parent-child relationship, it shall dismiss the petition, provided that where the court finds that the best interests of the child require substitution or supplementation of parental care and supervision, the court shall make such orders as it deems necessary.

The order of the juvenile court, previously quoted, which purports to change custody of the minor children is based upon this statutory provision. We hold, however, that unless the court finds the children to be "dependent, neglected, incorrigible or delinquent," subject matter jurisdiction over them is not established in the juvenile court. Therefore, there is neither jurisdiction to terminate the parent-child relationship nor any basis to order "substitution or supplementation of parental care and supervision" under A.R.S. § 8–538(D).

Our conclusion is clearly foreshadowed by our decision in *Matter of Appeal in Maricopa County, Juvenile Action Nos. A–23498 and JS–2201,* 120 Ariz. 82, 584 P.2d 63 (App. 1978). In a footnote, the court stated: "We do not determine, since it has not been argued to us, whether before a 'substitution of parental care' can occur under A.R.S. § 8–538(D), the court must make a determination that the child in question is at least 'dependent' under [A.R.S. § 8–201(11) ], although such an argument may have merit." 120 Ariz. at 85 n. 1, 584 P.2d at 66 n. 1.

2. Arizona Constitution, art. 6, § 15, reads as follows:

The superior court shall have exclusive original jurisdiction in all proceedings and matters affecting dependent, neglected, incorrigible or delinquent children, or children accused of crime, under the age of eighteen years. The judges shall hold examinations in chambers for all such children concerning whom proceedings are brought, in advance of any criminal prosecution of such children, and may, in their discretion, suspend criminal prosecution of such children. The powers of the judges to control such children shall be as provided by law.

The jurisdiction of the juvenile court is discussed in other Arizona decisions adverting to article 6, section 15 of the Arizona Constitution. In such cases, there is consistent reference to the constitutional requirement that the juvenile court, before acting, acquire jurisdiction over the children involved. In *Caruso v. Superior Court in and for the County of Pima,* 100 Ariz. 167, 412 P.2d 463 (1966), the Arizona Supreme Court held that "'[t]he [juvenile] court has no jurisdiction to enter an order [affecting the care or custody of a child] until it first determines that the child is dependent, neglected, incorrigible or delinquent." 100 Ariz. at 172, 412 P.2d at 466. *Caruso* involved the termination of parental rights and is directly on point. The court further stated:

> Before the Juvenile Court can consider what disposition it can make in the best interest of the child, it must have jurisdiction. Jurisdiction in the juvenile court does not attach until there has been an adjudication based upon evidence that the child is dependent, neglected, incorrigible or delinquent.

100 Ariz. at 173, 412 P.2d at 467. *See also Appeal in Maricopa County Juvenile Action No. J–86843,* 125 Ariz. 227, 608 P.2d 804 (App.1980); *Appeal in Maricopa County Juvenile No. J–86509,* 124 Ariz. 377, 604 P.2d 641 (1979), *U.S. cert. den.* 445 U.S. 967, 100 S.Ct. 1660, 64 L.Ed.2d 245 (1980); *Maricopa County Appeal No. J–68100 v. Haire,* 107 Ariz. 309, 486 P.2d 791 (1971).

By reason of the foregoing, the order of the Maricopa County Juvenile Court is set aside as void. Since it is, we do not reach any other question pertaining to the authority of the juvenile court to "change custody" in a situation where dependency has been found. It is obvious that great difficulty arises where conflicting custody orders arise from courts acting differently upon the same subject matter.

We turn next to the procedural underpinnings of this special action. The question to be resolved is whether petitioner has set forth adequate grounds to justify granting jurisdiction in accordance with the Rules of Procedure for Special Actions.

Rule 3, Rules of Procedure for Special Actions states that the only questions that may be raised in a special action are:

> (a) Whether the defendant has failed to exercise discretion which he has a duty to exercise; or to perform a duty required by law as to which he has no discretion; or

> (b) Whether the defendant has proceeded or is threatening to proceed without or in excess of jurisdiction or legal authority; or

> (c) Whether a determination was arbitrary and capricious or an abuse of discretion.

Petitioner's contention that the order of the juvenile court was without jurisdiction or legal authority comes squarely within paragraph (b) and has been discussed earlier.

Respondent contends that we should decline jurisdiction since if there is an equally plain, speedy and adequate remedy by appeal, special action proceedings are not available. Rule 1, Rules of Procedure for Special Actions. The argument is based upon the failure of petitioner to appeal from the order of the juvenile court in a timely manner. The latter assertion is correct. Petitioner attempted an appeal from the order of the juvenile court but it was dismissed as untimely by this court on June 11, 1982, as not in compliance with rule 25(a), Rules of Procedure for the Juvenile Court.[3] If this special action were nothing more than an untimely appeal in disguise, we would agree with respondent's argument and decline jurisdiction. It is, however, much more and therefore falls within a narrow but different category.

---

3. In doing so, this court also rejected an order of the juvenile court which purported to extend the time for appeal. See rule 29(c), Rules of Procedure for the Juvenile Court. In addition, we also denied an alternative request to treat the appeal as a special action proceeding, but we did so only on the basis that it was procedurally irregular.

As we discussed earlier in this opinion, at issue here is an order of the juvenile court which is void. Certainly petitioner could have filed a timely appeal to have it set aside. A.R.S. § 8–236; rule 24, Rules of Procedure for the Juvenile Court. However, even in the absence of a timely appeal, a void order or judgment entered by a court lacking jurisdiction may be attacked at any time. *In re Milliman's Estate,* 101 Ariz. 54, 415 P.2d 877 (1966); *City of Flagstaff v. Babbitt,* 8 Ariz.App. 123, 443 P.2d 938 (1968). This may be undertaken by motion or independent action. Rule 60(c), Rules of Civil Procedure. Since this avenue of relief is clearly open to petitioner in Arizona, once decided by the superior court, it would most certainly give rise to an appeal to this court by one or the other of the parties. Accordingly, the very question before us now would be before us then, only months or perhaps years later. When the urgent and agonizing nature of the numerous proceedings affecting custody is taken into consideration, with the resulting detriment to the children involved, it is apparent that the ultimate remedy available to petitioner by way of appeal is neither plain, speedy nor adequate. The rights of the parties need not be so long delayed. Extraordinary relief has long been appropriate in Arizona, illustrated by the language of the Arizona Supreme Court in *City of Phoenix v. Rodgers,* 44 Ariz. 40, 34 P.2d 385 (1934):

> It is an extraordinary remedy granted usually only in cases of necessity, and is ordinarily a matter of sound discretion, to be granted or withheld by the court according to the nature and circumstances of the case, particularly when there is another remedy. * * * It may, however, be granted notwithstanding the existence of another adequate remedy, for it is a remedy within the sound discretion of the court to which application is made.

44 Ariz. at pp. 45–46, 34 P.2d at p. 387.

For the reasons set forth, we find that special action relief is appropriate and exercise our discretion in favor of accepting jurisdiction of this special action.

There is, finally, an additional procedural matter to consider. The response to this special action asserts that the present petition is deficient because it does not name Roger Rudman, husband of respondent Carol Rudman, as a party, thereby denying him an opportunity to respond. It is true that both Carol Rudman and Roger Rudman were parties to the proceedings in the juvenile court by virtue of provisions of the Juvenile Code which allow a petition to be brought by an interested party. On the other hand, rule 2, Rules of Procedure for Special Actions, under circumstances which are present here, requires that "the real party or parties in interest shall ... be joined as defendants." Clearly respondent, as the mother of the minor children and a party to the various custody proceedings prior to this case, is a real party in interest. It is not at all clear that Roger Rudman is a real party in interest for purposes of this special action since the juvenile court entered no order in his favor. Nevertheless, we now order that Roger Rudman be shown as a respondent party to these proceedings and allow the response to the special action petition which was signed by him as well as respondent Carol Silver Rudman to serve as his response to the petition.

Based upon the reasons previously set forth, the minute order dated October 28, 1981, and the written order dated November 10, 1981, are vacated to the extent that they provide for substitution and supplementation of parental care and supervision pursuant to A.R.S. § 8–538(D).

CONTRERAS, C.J., concurs.

GREER, Judge, dissenting:

I agree with that part of the majority's opinion finding that the trial court acted in excess of its jurisdiction. However, because there was, and still is, an equally plain, speedy, and adequate alternative remedy available to petitioner, I respectfully dissent from the majority's decision to exercise our special action jurisdiction.

As a court of limited jurisdiction, we can only consider matters specifically conferred upon us by statute. *Campbell v. Arnold,*

121 Ariz. 370, 590 P.2d 909 (1979); *Baca v. Don,* 130 Ariz. 222, 635 P.2d 510 (App.1981). Accordingly, before reaching the merits of the instant petition, we must determine whether we have jurisdiction. The term "jurisdiction" has dual significance in special action proceedings. *See* Vol. 1, St. Bar of Ariz., Ariz.App. Handbook, sec. 7.3 (1978). First, we must decide whether we have traditional subject matter jurisdiction to hear the petition. If so, we then determine whether we may properly exercise that jurisdiction. *Id.* Only after answering both inquiries in the affirmative may we reach the merits of the petition.

### Subject Matter Jurisdiction

It must be remembered that the court of appeals' jurisdiction over special actions is much more limited than that of our supreme court. *See Baca v. Don, supra.* Our subject matter jurisdiction over such proceedings is statutory in origin. A.R.S. § 12–120.21A(3) provides:

A. The court of appeals shall have:

. . . .

3. Jurisdiction to issue injunctions, writs of mandamus, review, prohibition, certiorari and other writs necessary and proper to the complete exercise of its appellate jurisdiction.

Rule 1(a), 17A A.R.S., Special Actions, Rules of Procedure, modifies the statute by delimiting the scope of special actions to that available under the traditional writs of certiorari, mandamus, and prohibition.

The instant petition seeks relief traditionally granted by writ of certiorari. The original jurisdictional scope of the old writ extended only to those cases which were not appealable, regardless of the adequacy of the appellate remedy. *Miller v. Superior Court,* 88 Ariz. 349, 356 P.2d 699 (1960); *Miller v. Superior Court,* 21 Ariz. 61, 185 P. 357 (1919); *Territory v. Doan,* 7 Ariz. 89, 60 P. 893 (1900).

In *Forman v. Creighton School District No. 14,* 87 Ariz. 329, 351 P.2d 165 (1960), our supreme court recognized the harsh effect of the old rule and granted a writ of certiorari because the remedy by appeal was "in-adequate." And, in *Genda v. Superior Court,* 103 Ariz. 240, 439 P.2d 811 (1968), the court formally recognized that the old rule had been "relaxed." *See also Johnson v. Collins,* 11 Ariz.App. 327, 464 P.2d 647 (1970).

In light of the language of A.R.S. § 12–120.21A(3), to wit: "[W]rits necessary and proper to the complete exercise of its appellate jurisdiction", and perhaps due to the harsh results of the old rule, this court has held that it has subject matter jurisdiction over special actions when it has potential appellate jurisdiction over the subject matter under consideration by the lower court. *See, e.g., Morrison v. Superior Court of Coconino County,* 10 Ariz.App. 601, 461 P.2d 170 (1969). Our appellate jurisdiction pertains to actions and proceedings originating in or permitted by law to be appealed from the superior court, except criminal actions involving crimes for which a sentence of death or life imprisonment has been imposed. *Baca v. Don, supra.* A final order of the juvenile court may be appealed to the court of appeals. 17A A.R.S. Juv.Ct. Rules of Proc., rule 24(a). Thus, this court had appellate jurisdiction over the subject matter of the instant case. Therefore, under *Morrison,* we also have subject matter jurisdiction to entertain this special action petition.

### Propriety of Exercising Jurisdiction

Turning to the second inquiry, it has long been the rule of law in Arizona that jurisdiction to entertain an extraordinary writ will not be exercised when there is an equally plain, speedy, and adequate remedy by appeal. *See, e.g., Dean v. Superior Court,* 84 Ariz. 104, 324 P.2d 764 (1958); *Rosenberg v. Arizona Board of Regents,* 118 Ariz. 489, 578 P.2d 168 (1978). This rule was codified in mandatory terms by rule 1(a) of the Rules of Procedure for Special Actions. And, as pointed out by the State Bar Committee notes to rule 1, "[t]he principles as to what is 'an equally plain, speedy, and adequate remedy by appeal' are wholly unchanged by this rule." See also rule 1(a), Arizona Rules of Procedure for

Special Actions; *Bilagody v. Thorneycroft,* 125 Ariz. 88, 607 P.2d 965 (App.1979).

What constitutes a "plain, speedy and adequate remedy" is a question which has received much consideration by the courts, "and is so much dependent upon the facts of particular cases, that the formulation of a general rule is not practicable even if possible." 1 W.F. Bailey, Bailey on Habeas Corpus 647, § 165 (1913). However, it is clear that the burden is upon the petitioning party to show that an available appeal is not plain, speedy and adequate. In considering this issue, the Supreme Court of Idaho has held that, "[a] right of appeal is regarded as a plain, speedy and adequate remedy at law in the absence of a showing of exceptional circumstances or of the inadequacy of an appeal to protect existing rights." *Smith v. Young,* 71 Idaho 31, 225 P.2d 466, 468 (Idaho 1950).

The instant action was necessitated by petitioner's failure to timely perfect his rights to an appeal. However, the fact remains that an appeal was available. There has been no showing that such appeal would have been inadequate. In fact, petitioner's filing of an appeal, albeit untimely, indicates his belief that it was an adequate remedy. To exercise jurisdiction at this point would permit petitioner an unwarranted second bite at the apple, and thus abrogate our rules of appellate procedure.

That a writ of certiorari was not to be used as a substitute for an appeal was recognized long ago in *Territory v. Doan:*

> It would not be permitted to take the place of an appeal or writ of error, even to correct judgments or other proceedings of a court in excess of jurisdiction. Our statute is framed with this idea of the province of the writ, and provides that it may issue when there is no appeal, nor, in the judgment of the court, a plain, speedy, and adequate remedy.

7 Ariz. at 93, 60 P. at 894.

The issue was similarly resolved in the more recent case of *Rosenberg v. Arizona Board of Regents:*

> [F]acts must appear from an examination of appellant's third count which would

indicate that she did not have an adequate remedy at law. Since appellant had an appeal under the administrative review act, it cannot be said she did not have an adequate remedy at law.

118 Ariz. at 493, 578 P.2d at 172. *Accord, Hurst v. Bisbee Unified School District No. 2,* 125 Ariz. 72, 607 P.2d 391 (App.1980). Our ability to provide a speedy remedy by way of special action will be greatly compromised if we permit that procedure to be used as a substitute for appeal. Moreover, as the majority recognizes, adequate relief remains available to petitioner pursuant to rule 60(c) of the Arizona Rules of Civil Procedure.

Although cognizant of the fact that minor children are involved in this matter, I am not persuaded by the majority's contention that the available alternative remedies would create undue delay and result in detriment to the children. Our supreme court has also spoken on this issue:

> Of course, there is expense and delay in being put to a trial and then an appeal. But these facts alone will not justify issuing the writ.

*Caruso v. Superior Court,* 100 Ariz. 167, 171, 412 P.2d 463, 466 (1966). *Accord, Armstrong v. City Court of Scottsdale,* 118 Ariz. 593, 578 P.2d 1022 (App.1978).

The long delays currently experienced in our appellate system cause some degree of harm to most litigants, sometimes more so to those appealing from our juvenile courts. The solution is not, however, to be found by enlarging the scope of our special action petition as the majority would do. And, until our supreme court rules differently, I feel it would be an abuse of our discretion to exercise jurisdiction in matters such as the one at bar.

For the foregoing reasons, I would decline to exercise jurisdiction in this matter.